FILED & JUDGMENT ENTERED
Steven T. Salata

Feb 14 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-31612 |
| HOWARD BUDDY HELMS, SR. and | ) | Chapter 7 |
| SANDRA NELSON HELMS, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| BELFOR USA GROUP, INC., | ) | Adv. No. 10-3259 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOWARD BUDDY HELMS, SR., | ) | |
| SANDRA NELSON HELMS, and | ) | |
| LANGDON M. COOPER, TRUSTEE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANT'S CROSS-MOTION

**THIS MATTER** is before this Court on cross summary judgment motions filed

by Plaintiff Belfor USA Group, Inc. ("Belfor") and Defendant, Langdon M. Cooper, the

Chapter 7 Bankruptcy Trustee for Howard Buddy Helms, Sr. and Sandra Nelson Helms ("Trustee").  The salient facts are not in dispute.

I.      Statement of the Case and Procedural Background

Howard Buddy Helms, Sr. ("Howard") and Sandra Nelson Helms ("Sandra") (collectively, the "Helmses") filed a voluntary Chapter 7 case on June 6, 2010.  On October 4, 2010, Belfor brought this adversary proceeding seeking a declaration that certain insurance proceeds held by the Helmses at the petition date are not property of the bankruptcy estate but are instead owned by Belfor, pursuant to a prepetition assignment. Langdon Cooper, the Chapter 7 Trustee ("Trustee"), answered and counterclaimed, arguing that Belfor's assignment was legally defective, and these proceeds are in fact Section 541 estate property.  Although named as additional defendants, the Helmses took no position in this dispute and were consensually dismissed from the action on February 14, 2011.

On February 10, 2011, Belfor filed a motion for summary judgment as to the Trustee's First and Fourth Defenses, as well as his counterclaims (Fifth Defense). Belfor's Mot. for Summ. J., Feb. 10, 2011, ECF No. 19.  The two sides have since stipulated to the dismissal of the Trustee's counterclaims with prejudice.  Stipulation, Mar. 28, 2011, ECF No. 22.  Belfor then amended its summary judgment motion to contest the Trustee's remaining defenses.  Belfor's Am. Mot. for Summ. J., May 13, 2011, ECF No. 23.  The Trustee countered by filing his own summary judgment motion on June 24, 2011.  Trustee's Mot. for Summ. J., June 24, 2011, ECF No. 25.  After a hearing in August 2011 and a succession of briefs and counter-briefs, the Court took the matter under advisement.

II.    <u>Statement of Undisputed Facts</u>

The Helmses owned a residence located at 15217 Bexley Place, Charlotte, North

Carolina ("Residence").  The Residence was tenancy by the entireties property.

A house fire destroyed the Residence in October 2007.  Afterward, the Helmses

filed a claim with their homeowner's insurance carrier (the "Insurance Policy").  The

Helmses also retained Belfor, a licensed general contractor, to repair and essentially

rebuild their home.  The Helmses' understanding with Belfor was memorialized in two

written documents.  First, Belfor and Howard Helms executed a Work Authorization on

October 31, 2007 ("Work Authorization") for Belfor to provide work, materials, and

equipment to repair the Residence.  The Work Authorization included an assignment

provision purporting to transfer to Belfor all of the homeowners' right, title, and interest

in insurance proceeds—meaning, in this case, the Insurance Proceeds the Helmses were

anticipating receiving from Auto-Owners Insurance.  Sandra Helms did not sign the

Work Authorization.

A second document further memorializing the parties' agreement was a "Belfor

Construction Contract" dated December 17, 2007 ("Construction Contract").  Here,

Belfor agreed to furnish, inter alia, all labor, materials, tools, and equipment in order to

repair the Residence.  In exchange, the Helmses agreed to pay Belfor the sum of

$217,981.72.  Both Helmses signed this second document.

Upon execution of this second document, Belfor commenced work on the

Residence.  Reconstruction of the Residence was completed on August 4, 2008.

Meanwhile, in July 2008, the Helmses received $266,363.00 from their insurance

carrier on account of their claim (the "Insurance Proceeds").  Despite receiving this sum,

the Helmses paid Belfor only approximately $96,182.57 of the $217,981.72 owed it under the Agreement.

Belfor responded by filing a Claim of Lien on the Residence on November 26, 2008.  On January 22, 2009, Belfor filed a complaint in North Carolina state court against the Helmses to perfect and enforce its lien against the residence and to establish its debt. Belfor's Complaint is focused on establishing its debt and a lien against the Helmses' residence.  There is no mention of the insurance funds or any assignment of the same in the parties' pleadings.

The Helmses resisted Belfor's claims, leading to a trial in Wake County Superior Court.  On April 28, 2010, the Superior Court entered a judgment in favor of Belfor (the "State Judgment") in the amount of $113,145.30 and granting Belfor a mechanic's lien on the Residence.  The State Judgment includes detailed findings of fact and conclusions of law supporting the debt and the imposition of the lien against the Residence.

The State Judge concluded that both the Work Assignment and the Construction Contract constituted the parties' agreement, specifically designating the two agreements the "Contract."[1]  State Judgment, Finding of Fact No. 4 and Conclusion of Law No. 1, ECF No. 23-1.

The State Court further concluded that the Helmses had assigned the Insurance Proceeds to Belfor.  Specifically, Finding of Fact No. 3 states in relevant part: "Defendant S. Helms [Ms. Helms] knew of and benefited from the Work Authorization signed by her husband [Mr. Helms]."  State Judgment, Finding of Fact No. 3, ECF No. 23-1.  The Work Authorization, of course, contained the assignment.  Further, Finding of

---

[1] For consistency, the overall agreement will be referred to as the "Contract" in this order.

Fact No. 15 states that "Pursuant to the terms of the Contract, . . . insurance policy proceeds in the amount owed to [Belfor] by [the Helmses] for work performed under the Contract were assigned and to be paid to [Belfor]."  State Judgment, Finding of Fact No. 15, ECF No. 23-1.

The Helmses did not appeal the Superior Court's decision.  Nor did they pay Belfor on the judgment debt.  Instead, the Helmses filed bankruptcy in this court one month after entry of the judgment.  At the bankruptcy date, the Helmses still possessed a portion of the Insurance Proceeds.  Their petition lists "[r]emaining Insurance Proceeds from casualty proceeds due to house fire" of $36,651.00.  Voluntary Petition, Schedule B, Item 17, No. 10-31612, ECF No. 1.  The Helmses have turned these funds over to the Trustee and have made no attempt to exempt them.  Thus, the contest over the Insurance Proceeds is purely between Belfor and the Helmses' other creditors, as represented by the Trustee.

III.    Statement of Positions

In their several briefs, the parties have made any number of arguments, procedural and substantive, on whether the assignment should be honored.  However, boiled down, Belfor contends that it owns the Insurance Proceeds because: (1) these monies were assigned to it by the Helmses before bankruptcy; (2) the validity of the assignment was previously established in a final state court ruling, was reaffirmed in this bankruptcy case, and is now unassailable under preclusion principles (collateral estoppel and res judicata); and (3) the assignment is not avoidable under Bankruptcy Code Section § 544 for several reasons, including (a) the Trustee's failure to plead such a claim, (b) the Trustee's failure to identify a "golden creditor" who could bring such an action at state law as required by

§ 544(b)(1), and (c) the contention that even if a "golden creditor" existed, it would be subject to Belfor's equitable defenses.

The Trustee also claims to "own" the Insurance Proceeds, via the estate. He says the assignment was invalid under state law such that the Insurance Proceeds still were owned by the Helmses at the bankruptcy date. They are now property of the bankruptcy estate under Section 541. Because the assignment was void, Belfor's interests are also subject to the Trustee's creditor powers under Section 544(a)(1) and (2).

The Trustee's theories are based upon Sandra Helms' failure to sign the Work Authorization, which contained the assignment. Sandra possessed an ownership interest in the Residence and a distinct ownership interest in the Insurance Proceeds that stood in place of the Residence after the fire. Since Howard Helms could not have unilaterally assigned his wife's interest in the Residence, the Trustee posits that he also could not unilaterally assign her interests in the Insurance Proceeds to Belfor.

The Trustee also disagrees with Belfor's collateral estoppel and res judicata arguments. He contends the validity of the assignment was not at issue in either the state court action nor the bankruptcy Section 522(f) lien avoidance motion. In any event, these state law equitable doctrines do not invalidate the bankruptcy trustee's avoidance powers pursuant to 11 U.S.C. § 544.

IV.    Issues Presented

To resolve this dispute, three related questions must be answered:

1.    Do the doctrines of collateral estoppel and res judicata preclude the Trustee from challenging the validity of the prepetition assignment of the Insurance Proceeds to Belfor?

2.  If not, was the purported assignment to Belfor effective under North Carolina law so as to make Belfor the owner of the Insurance Proceeds at the date of bankruptcy?

3.  Is the prepetition assignment of the Insurance Proceeds to Belfor avoidable under Code Section § 544(a)?

**Held:**

The State Judgment and its holding that the Helmses assigned the Insurance Proceeds to Belfor is binding under collateral estoppel principles on the Helmses and their bankruptcy trustee as their successor in interest to their property under Section 541. Neither preclusion doctrine, however, impinges upon the Trustee's Chapter 5 avoidance powers, as in this respect he stands in the shoes of creditors, not the debtors.  Even so, the Trustee has failed to demonstrate that the assignment would be avoidable at state law by one of the Helmses' creditors, and the transfer is not avoidable under Section 544.  The Insurance Proceeds belong to Belfor.

## DISCUSSION

I.   <u>Summary Judgment Generally.</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Id.</u> at 249.  When hearing a motion for summary judgment, the inquiry made by the judge is whether "there

7

are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." Id. at 250.

When a party has moved for summary judgment and shown that a genuine issue

of material fact does not exist, "the burden shifts to the non-moving party to show that a

genuine issue of material fact exists." Felder v. Am. Gen. Fin., Inc. (In re Felder), 2000

WL 33710885, at *5 (Bankr. D. S.C. 2000) (citation omitted).  "The non-moving party

cannot rest on his pleading or merely show that there is 'some metaphysical doubt as to

the material facts;' rather, the non-moving party must come forward with specific facts

showing that there is an issue for trial." Id. (citations omitted).

II.     Whether State Preclusion Doctrines Bar the Trustee's Claims to the Insurance
        Proceeds Funds.

Belfor argues that both the North Carolina Superior Court and this bankruptcy

court have held that the Insurance Proceeds were assigned to it by the Helmses before

bankruptcy.  Belfor further contends that the bankruptcy trustee stands in the shoes of the

debtors, such that under the two preclusion doctrines, collateral estoppel and res judicata,

the Trustee cannot now contest the validity of the assignment.

As a general rule, federal courts must afford "the same preclusive effect to a state

court judgment as the forum that rendered the judgment would have given it." Sartin v.

Macik, 535 F.3d 284, 287 (4th Cir. 2008) (citations omitted).  The judgment in question

was entered by a North Carolina state court, so we apply the North Carolina version of

the preclusion doctrines.  Id.

   **A.  The Preclusion Doctrines.**

Collateral estoppel, or issue preclusion, bars relitigation of an issue previously

decided only if the party against whom the prior decision is asserted had "a 'full and fair

opportunity' to litigate that issue in the earlier case."  Allen v. McCurry, 449 U.S. 90, 95

(1980) (citations omitted).  Collateral estoppel requires a showing by the proponent that

"the issue in question was identical to an issue actually litigated and necessary to the

judgment, that the prior action resulted in a final judgment on the merits, and that the

present parties are the same as, or in privity with, the parties to the earlier action."  Sartin,

535 F.3d at 287-88 (citing Thomas M. McInnis & Assocs., Inc. v. Hall, 349 S.E.2d 552,

557 (N.C. 1986)).

    Res judicata, i.e., claim preclusion, "bars the relitigation of any claims that were

or could have been raised in a prior proceeding between the same parties."  Sartin, 535

F.3d at 287 (citing Thomas M. McInnis & Assocs., Inc., 349 S.E.2d at 556-57).  "The

essential elements of res judicata are: (1) a final judgment on the merits in a prior suit; (2)

an identity of the cause of action in the prior suit and the present suit; and (3) an identity

of parties or their privies in both suits."  First Mount Vernon Indus. Loan Ass'n v. Prodev

XXII, LLC, 2011 WL 32539, at *5 (N.C. Ct. App. 2011) (quoting Bryant v.

Weyerhaeuser Co., 502 S.E.2d 58, 61, disc. review denied, 515 S.E.2d 700 (N.C. 1998)).

    **B.  There is no Preclusive Effect to the Section 522(f) Order.**

    Early in this Chapter 7 case, the Helmses sought to avoid Belfor's lien against

their residence under Section 522(f) as impairing their exemptions.  Mot. to Avoid J.

Lien, No. 10-31612, ECF No. 10.  The Order denying their motion contained a legal

conclusion that "[p]ursuant to the terms of the Contract, the insurance policy proceeds in

the amount owed to Belfor were assigned and to be paid directly to Belfor."  Order Den.

Debtors' Mot. to Avoid J. Lien, No. 10-31612, ECF No. 42.  Belfor contends that this

conclusion bars the Trustee from asserting a claim to the Insurance Proceeds.

The lien avoidance order is not preclusive.  The issue raised by the Helmses' lien avoidance motion involved Belfor's lien against the Residence and whether that lien constituted a "judicial" or instead a "statutory" lien within the meaning of the statute.  At the conclusion of the hearing, this Court agreed with Belfor that its lien was statutory and hence not avoidable.  In a bench ruling, this Court briefly stated the reasons supporting its decision and then asked Belfor's counsel to submit an order consistent with those remarks.

Unfortunately, the order that was tendered by counsel contained a "flyer"—an extraneous conclusion that the insurance proceeds had been assigned to Belfor before bankruptcy.  The importance of that conclusion was not recognized by this Court and unfortunately, it remained in the order when entered.

That extraneous conclusion does not have a preclusive effect.  The assignment of the insurance proceeds question was not presented in the lien avoidance motion.  It was not argued at hearing.  It was not part of the bench ruling.  The fact that the conclusion was included in the order submitted by counsel was in all likelihood due to a mistake by counsel.  Otherwise, it was a fraud on the court.[2]  Either way, the conclusion is subject to reconsideration.

Further, the preclusion doctrines are not met.  Collateral estoppel does not apply because the issue was not actually litigated, nor was it necessary to the lien dispute on the residence.  And neither doctrine applies in that the Trustee was not a party to the lien

---

[2] The Trustee accuses opposing counsel of bad faith in adding this conclusion to the order.  It is unclear whether this was an inadvertent error, as opposed to an intentional act.  As the Trustee points out, Belfor's counsel was aware at the time that the insurance assignment issue was to be decided in this litigation and not in the lien avoidance matter.

avoidance dispute.  This fight was entirely between Belfor and the Helmses, as the

Debtors sought to avoid a lien to secure their exemptions.

In some circumstances, typically when asserting a debtor's prepetition property

rights, the Chapter 7 trustee is the debtor's legal privy.  However, as to most motions that

are litigated in a Chapter 7 case, debtors and their trustees are independent, and often

adverse, parties.  Typically, a Chapter 7 Trustee has no economic interest in a lien

avoidance motion.  If successful, the debtor obtains the equity in the subject property; if

unsuccessful, the lien creditor.  The estate is not usually affected by the outcome of a

Section 522(f) motion, and the Trustee is not in privity with a debtor.[3]

Given this, if the Trustee's assault on the alleged assignment is precluded, it must

be by virtue of the State Judgment.

### C.  The State Judgment and the Assignment.

The State Judgment established Belfor's debt, awarded it costs and attorneys'

fees, and established a mechanic's lien (N.C. Gen. Stat. §§ 44A-17 – 44A-35) on the

Helmses' residence.  The State Judgment also includes a legal conclusion that the

Helmses assigned the insurance proceeds to Belfor before bankruptcy.  As before, Belfor

contends that the conclusion is preclusive.

The Trustee does not deny that the elements of collateral estoppel exist in the

State Judgment.  Instead, he seeks to minimize the impact of that ruling.  For example,

even as the Trustee admits that the State Court decided that the Helmses had assigned the

Insurance Proceeds to Belfor, he contends that it did not determine whether the

assignment was "valid," or "effective," as against Ms. Helms.  Trustee's Br., ECF No.

---

[3] A Trustee might have an interest in the outcome of a debtor's lien avoidance motion, if he believed both the lien and the debtor's exemption to be invalid.  However, even in this circumstance, the Trustee's interests are opposed to, and certainly not aligned with, those of the Debtors.

26; Trustee's Supplemental Br., ECF No. 28.  Further, the Trustee argues that the State

Judgment did not, and could not, determine whether the Assignment was avoidable under

Bankruptcy Code Section 544.  Trustee's Br., ECF No. 26.

     *1. Sandra Helms' Interests in the Insurance Proceeds.*

     The Trustee's arguments rest on his assertion that Sandra Helms had a separate

property interest in the Insurance Proceeds that could not be assigned to Belfor without

her signature.

     The first part of this argument is well taken.  Under North Carolina law, if a

married couple owns real property as tenants by the entireties, both spouses have an

insurable interest in the property and any fire insurance covering the entireties property.

A wife, living separate and apart from her husband, is entitled to collect insurance

proceeds under a policy taken out, and paid for, by her husband on their entireties

property.  Carter v. Cont'l Ins. Co. of N.Y., 89 S.E.2d 122 (N.C. 1955).  In Carter, the

Court found that a husband's proprietary interest is an inseparable part of the moiety such

that his insurable interest covered, and the insurance loss benefits inured to the benefit of,

the entire estate; since the wife also had an interest in that entireties estate, she had an

interest in the insurance proceeds.  Id. at 124 (internal citations omitted); see also Lovell

v. Rowan Mut. Fire Ins. Co., 274 S.E.2d 170 (N.C. 1981) (wife of an insured who

intentionally burned entireties property is entitled to recover under insurance policy

issued to the husband, notwithstanding his act of arson).

     Since Sandra Helms had an insurable interest in the Insurance Proceeds, the

Trustee contends that her interests could not be unilaterally assigned by her husband to

Belfor.  Thus, the Trustee maintains that the Assignment was legally ineffective to

convey title to Belfor, both as to Sandra and as to her creditors.

   2.  *Contrasting the Trustee's Section 541 and 544 Powers.*

   The Trustee's arguments highlight the two powers that a trustee may exercise in a

bankruptcy case.  First, under Section 541, the Trustee succeeds to control of a debtor's

nonexempt property and may liquidate it for the benefit of creditors.  See 11 U.S.C. §§

521(a)(4) (turnover of property of the estate); 541 (property of the estate); 704(a)(1)

(duties of trustee).  Second, the Trustee may avoid certain transfers of a debtor's property

under Chapter 5 of the Bankruptcy Code, Sections 544-549, and recover that property, or

its value, under Section 550.  11 U.S.C §§ 544-550.

   When a Trustee liquidates a debtor's property, including asserting a debtor's

litigation claims, he is acting as the debtor's legal successor-in-interest.  See, e.g., First

Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc., 825 F.2d 1475 (11th Cir. 1987);

Buckley v. Transamerica Inv. Corp. (In re Southern Kitchens, Inc.), 216 B.R. 819, 831-32

(Bankr. D. Minn. 1998).  In these instances, the trustee stands in the debtors' shoes and is

subject to defenses which would be applicable to the debtors themselves.  See First Ala.

Bank of Montgomery, N.A., 825 F.2d 1475; Drake v. Franklin Equip. Co. (In re Franklin

Equip. Co.), 418 B.R. 176, 210 (Bankr. E.D. Va. 2009).

   Conversely, when the Trustee seeks to avoid transfers of a debtor's property

under Chapter 5, the Trustee is acting on behalf of creditors and is their representative.

See In re Worldcom, Inc., 401 B.R. 637, 650 (Bankr. S.D.N.Y. 2009) (citations omitted)

("[t]he trustee does not bring an avoidance action for the benefit of the debtor, but for the

benefit of the estate's creditors"). On these occasions, the Trustee is not bound by the

debtor's actions; nor is he the debtor's privy.

The distinction is important in the present case because the Trustee asserts each

power as to the Insurance Proceeds. The Trustee first claims to "own" the Insurance

Proceeds under Section 541, as Sandra Helms' successor-in-interest.[4] He argues that the

purported assignment failed to convey Sandra Helms' half interest in the Insurance

Proceeds because she did not sign it. However, even if valid as to Sandra Helms, the

Trustee maintains that transfer was ineffective as against her creditors and is subject to

the Trustee's "strong arm" powers under Section 544.

We consider the Trustee's two theories separately.

III.    Collateral Estoppel Bars the Trustee, as the Helmses' Legal Successor-in-Interest,
        from Claiming the Insurance Proceeds under Section 541.

Standing in the Debtors' shoes, it is difficult for the Trustee to argue that the State

Judgment is not binding on him. As noted above, when asserting Sandra Helms'

property rights in these monies, the Trustee is her privy. See, e.g., First Ala. Bank of

Montgomery, N.A., 825 F.2d 1475; In re Southern Kitchens, Inc., 216 B.R. at 831-32.

"Privity," for purposes of collateral estoppel and res judicata, "denotes a mutual or

successive relationship to the same rights of property." State ex rel. Tucker v. Frinzi, 474

S.E.2d 127, 130 (N.C. 1996) (quoting Settle v. Beasley, 308 S.E.2d 288, 290 (N.C.

1983)). In this context, if the doctrines of collateral estoppel and res judicata would

---

[4] The parties' positions have evolved over the course of this litigation. It is unclear at this date whether the
Trustee claims only Sandra's half interest in the proceeds or both Helms' interests. Howard, of course,
signed the written assignment, and since North Carolina does not recognize tenancy by the entireties as to
personal property, Bowling v. Bowling, 91 S.E.2d 176, 180 (N.C. 1956), it would appear that the
conveyance would be valid as to Howard's half interest. Thus, we will refer only to Sandra's half interest
going forward.

prevent the debtor from asserting a claim, the trustee is also bound.  Keller v. Keller (In re Keller), 185 B.R. 796, 800 (B.A.P. 9th Cir. 1995) (Bankruptcy Trustee bound by judgment from state family law court issued prior to the petition date under res judicata); see also Randa Coal Co. v. Va. Iron Coal & Coke Co. (In re Randa Coal Co.), 128 B.R. 421 (W.D. Va. 1991).[5]

The State Court found that "[Ms.] Helms knew of and benefited from the Work Authorization signed by her husband [Mr. Helms]."  State Judgment, Finding of Fact No. 3, ECF No. 23-1.  That Court also found that while the Helmses received $266,363.00 from their insurer to repair the Residence, State Judgment, Finding of Fact No. 15, ECF No. 23-1, they only paid Belfor $96,182.57 and "otherwise retained or spent the money provided to them by their insurer[,]" State Judgment, Finding of Fact No. 16, ECF No. 23-1.  Based upon these facts, the state judge concluded that both the Work Assignment and the Construction Contract constituted the parties' agreement, specifically designating the two agreements, the "Contract."  State Judgment, Finding of Fact No. 4 and Conclusion of Law No. 1, ECF No. 23-1.  The State Court further concluded that "[p]ursuant to the terms of the Contract, without consideration of change orders and setoffs, insurance policy proceeds in the amount owed to [Belfor] by [the Helmses] for work performed under the Contract were assigned and to be paid to Plaintiff."  State Judgment, Finding of Fact No. 15, ECF No. 23-1.  Finally, the State Court made a Conclusion of Law declaring that Contract to be enforceable against each of the Defendants.  State Judgment, Conclusion of Law No. 1, ECF No. 23-1.  In short, the

---

[5] However, see discussion below, regarding avoidance actions.

State Judgment declared the Insurance Proceeds to be Belfor's property under their agreement.

Given these specific rulings, and the fact that the Trustee is subject to collateral estoppel to the same extent the Helmses would be, it would appear that the Trustee's argument that the assignment was invalid as to Sandra Helms is precluded.

Seeking to avoid this result, the Trustee would limit the breadth of the ruling. Specifically, he suggests that the State Judgment "does not provide . . . that the Work Authorization unilaterally signed by Mr. Helms was a **valid** assignment such that the Work Authorization **effectively** assigned the Insurance Proceeds to Belfor."

This Court disagrees.  That is exactly what the State Court held.  It would be obtuse to believe that, having concluded that the Insurance Proceeds were assigned to Belfor by the Helmses, the State Judge might have been reserving judgment as to whether the assignment was effective as between these parties.

In substance, the State Court determined that Sandra Helms ratified the Work Authorization by conduct, including the assignment, and then both Helmses breached the Contract.[6]  By holding the Work Authorization to be part of the parties' agreement and further holding that the Helmses had conveyed both Defendants' interest in the Insurance Proceeds to Belfor, the State Court was clearly stating that the assignment was valid and effective as against both Helmses.

Since collateral estoppel would bar the Helmses from asserting in any second litigation with Belfor that the Insurance Assignment was ineffective, the Trustee is also precluded from making that assertion—when standing in the debtors' shoes.

---

[6] This conclusion was necessary to the State Court's Judgment, not only as to establishing the liability, but also the award of interest and attorneys' fees to Belfor, based upon a contract provision contained in the Work Authorization.  State Judgment, Finding of Fact No. 14, ECF No. 23-1.

Given this, and since the Trustee's "ineffectiveness" argument is reasserted in his Section 544 argument, we will for the moment hold discussion of the merits of his theory.

IV.   <u>The Assignment is not Avoidable Under Section 544.</u>

The Trustee's fallback argument is that the assignment was also ineffective as against Sandra Helms' creditors and therefore is avoidable under Section 544(a)(1) & (2).[7]

Section 544(a)(1) & (2) provides, in relevant part:

> (a) The trustee shall have, as of the commencement of this case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists, . . . .

11 U.S.C. § 544(a)(1) & (2).

Once again, the Trustee argues that Sandra Helms had an insurable interest in the insurance proceeds that could not be unilaterally assigned to Belfor by her husband. The Work Authorization failed to transfer her property interests in the Insurance Proceeds to Belfor, meaning that the transfer was void not just as to Sandra, but as to her creditors.

---

[7] Belfor argues in its briefs that the Trustee is proceeding under Section 544(b). However, the Trustee's latest brief clarifies that his theory is based upon Section 544(a)(1) & (2), so we will confine our discussion to these subparts.

Belfor has argued a variety of defenses to this second theory, including an assertion that the Trustee has not separately pled a Section 544(a) cause of action and may not now seek to avoid the transfer under that provision.

### A. Failure to Plead a Section 544(a) Action is Not Fatal to the Trustee's Claims.

Belfor argues that there is no Section 544(a) avoidance claim asserted in this action. The Trustee first brought a Counterclaim under 11 U.S.C. § 544(a) (attacking Belfor's mechanic's lien against the Helmses' residence), but stipulated to its dismissal with prejudice. Stipulation, Mar. 28, 2011, ECF No. 22.

According to Belfor, the Trustee's attack on the Assignment was based upon alleged ownership under Section 541 and avoidance under § 544(b). After Belfor argued the lack of an identified "golden creditor" as required by § 544(b), the Trustee asserted in his Supplemental Brief that he was acting under Section § 544(a). Belfor contends that the Trustee is barred from reasserting his dismissed § 544(a) claim in a reply brief. Of course, the Trustee disagrees.

This action involves competing theories as to ownership of the Insurance Proceeds and the purposes of the action. Belfor asserts that these monies are presently its property based upon the prepetition assignment. Thus, Belfor believes the Trustee is now seeking to **avoid** a prepetition transfer of property and recover the same. The Trustee has a diametrically opposed view: he believes the assignment was void ab initio such that half of these monies were still Sandra Helms' property at the petition date. To his mind, Belfor is making a claim to monies owned by the debtor at the petition date that are now estate property. The Trustee views himself as defending against Belfor's claims on the basis that his Section 544 powers are paramount.

18

On the unique facts presented, this Court gives the nod to the Trustee on the procedural question. The need to plead question hinges on whether one assumes a prepetition transfer. The Trustee does not, so he did not specifically plead Section 544. As he points out, the case law does not require that a Section 544 affirmative defense be specifically pled under Rule 7008, nor as a counterclaim. Placer Sav. & Loan Ass'n. v. Walsh (In re Marino), 49 B.R. 600, 604 (N.D. Cal. 1985), rev'd on other grounds, 813 F.2d 1562 (9th Cir. 1987).

Further, there is no question but that both parties fully appreciated the issues to be decided in this case from the outset. The First Defense in Trustee's Answer states in relevant part: ". . . there is no valid and enforceable assignment to or for the benefit of the Plaintiff of the $36,651 the Trustee holds as an asset of the estate under Section 541 of the Code . . . ." Then, in his Third Defense, the Trustee denies Belfor's assertion (from its Amended Complaint) that the Insurance Proceeds were validly assigned to it and should not be property of the Debtors' estate.

Having defended against Belfor's declaratory judgment claim on the assertions that the assignment was not properly made and the property remains estate property, in now asserting Section 544(a)(1) and (2), the Trustee is simply stating the legal reasons why he believes his claim to the property to be superior to Belfor's.

Belfor's pleading argument fails under the Rules, or is at best a technical defense. Belfor has had adequate notice and has long been aware of the Trustee's claims to these monies.

**B.  The Trustee has Failed to Demonstrate a Superior Claim to the Proceeds under Section 544.**

We turn now to the merits of the Trustee's "ineffectiveness" argument. Fortunately, we do not need to decide the legally obscure question whether a spouse who is a sole named insured on an insurance policy can, under North Carolina law, unilaterally assign the benefits of the same to a third party after a casualty loss has occurred as to tenancy by the entireties property.

*1.  The Trustee's Creditor Avoidance Theory Rests on the Invalidity of the Transfer vis-à-vis Sandra Helms, not her Creditors.*

While the Trustee recasts his "ineffective" argument as a Section 544 creditor matter, it is essentially the same argument he made under his Section 541 theory.  In short, he believes the assignment to be void because Sandra did not sign the Work Authorization.  This theory is not really a creditor rights argument, and the Trustee makes no assertion why a creditor would be able to avoid the assignment.  Rather, this is an argument why the transfer would not be effective as to Sandra Helms, a co-owner of the Insurance Proceeds.  As explained above, the Trustee is precluded from making that assertion.

*2.  The Trustee's Theory Rests on an Invalid Premise.*

The second problem with the Trustee's theory is that it depends on an invalid premise: the suggestion that Sandra Helms did not consent to the assignment.  The State Court expressly concluded otherwise.  After hearing the evidence, that Court found Sandra Helms, while not a signatory to the Work Authorization, to be a willing participant in the assignment.  The finding that "Defendant S. Helms knew of and benefited from the Work Authorization contract signed by her husband" bears out this

conclusion.  It is clear that the State Judge considered Sandra Helms to have consented to, or ratified, her husband's execution of the Work Authorization, including the assignment.  This determination is demonstrated further by Conclusion of Law No. 1, in which the State Judge concludes that "The Contract, including the Work Authorization, is enforceable against each of the Defendants."  State Judgment, Conclusion of Law No. 1, ECF No. 23-1.

The State Court's conclusion is supported by the circumstances: Sandra owned an equal interest in the Residence.  Like her husband, she wanted that home rebuilt, and she and her husband contracted with Belfor to do the job.  While only Howard Helms signed the work authorization, both Helmses executed the subsequent agreement, the Construction Contract and Payment Schedule.  It is clear that the parties intended that Belfor be paid through the Insurance Proceeds.  No alternative source of funding as been suggested by any party.  The Helmses' home was in fact reconstructed by Belfor, and the Helmses enjoyed its benefits for several years.  This was not a case of one spouse unilaterally conveying away the other's rights.

The assignment was valid and effective as to the debtors.  Therefore, if the Trustee is to prevail under Section 544(a), he must demonstrate that the assignment was avoidable by one of Sandra Helms's creditors.

### 3. A Valid Prepetition Assignment Takes Precedence over the Trustee's Section 544 Powers.

When a person assigns to a creditor money that the debtor is entitled to receive from a third party, that assignment is perfected and complete when the assignment is executed, not when the money is disbursed to the creditor.  See Goldstein v. Madison Nat'l Bank of Washington, D.C., 807 F.2d 1070, 1074 (D.C. Cir. 1986); Huffman v.

Hopkins-Lewis Co. (In re Harbour), 801 F.2d 394 (4th Cir. 1986) (unpublished table

decision); First Trust Nat'l Ass'n v. Am. Nat'l Bank and Trust Co. of Chicago (In re

Adventist Living Ctrs., Inc.), 174 B.R. 505, 512 (Bankr. N.D. Ill. 1994).  Thereafter, if

the assignor later receives proceeds of assigned rights, the assignor holds them in

constructive trust for the assignee.  Tavormina v. Aquatic Co., N.V. (In re Armando

Gerstel, Inc.), 65 B.R. 602, 605-06 (S.D. Fla. 1986).

In contrast, the Trustee's Section 544(a) powers as a hypothetical judicial lien

creditor under Section 544(a)(1) and as the holder of an unsatisfied execution creditor

under Section 544(a)(2) both arise as of the date of bankruptcy.  Consequently, it has

been held that when property is assigned outside the preference period, proceeds that

debtor received during the preference period never became property of debtor's estate, but

were held in trust for the assignees.  In re Armando Gerstel, Inc., 65 B.R. at 605.

In our case, Belfor's assignment predates the preference period by several years.

Therefore, assuming the assignment to be effective against creditors, the Helmses had no

interest in the insurance proceeds when they received them, and the Trustee currently

holds no interest in the same.

Even while acknowledging the assignment, the Trustee maintains that this

conveyance was ineffective against creditors.  However, he cites no North Carolina

statutory or case authority to support his assertion, and it appears his position is entirely

reflexive.  For while many conveyances of property have to be made in writing and often

recorded in a public registry in order to be effective against the bankruptcy trustee, this

does not appear to be true for assignments of insurance proceeds.

*4. An Assignment of Insurance Proceeds Need Not be Made in Writing to be Effective.*

Unlike a transfer of the tenancy by the entireties real estate (which would require a recorded deed signed by both Helmses), no particular form of conveyance is required to assign insurance proceeds. An assignor's intention to assign a right can be made either orally or in writing, unless a writing is required by a statute or by contract. See Restatement (Second) of Contracts § 324 (1981).

Section 341 of the Restatement, entitled Creditors Of An Assignor, reiterates the premise that "[a]n effective assignment extinguishes the assignor's right" and places the proceeds in constructive trust for the assignee. Comment, Restatement (Second) of Contracts § 341 (citing Restatement of Restitution § 165). It also clarifies that the assignment is usually effective against third parties: A "creditor of the assignor who claims the assigned right by garnishment, levy of execution or like process is not a bona fide purchaser, even though he has no notice of the assignment. Unless protected by statute or by estoppel or like doctrine, he is subject to the assignee's right." Comment, Restatement (Second) of Contracts § 341.

There are some circumstances where a lack of formality may cause the assignment to "be defeated by creditors of the assignor . . . ." Id. at § 324. As to what these circumstances are, the Comment again references Section 341 of the Restatement.

Subsection b of Section 341 describes certain defective assignments that are subject to the claims of an assignor's creditors. First, it notes that "[a]n assignor's trustee in bankruptcy can in general reach all of the assignor's legal or equitable interest in any of his property, including powers that he might have exercised for his own benefit and

property transferred by him in fraud of creditors." Id. at § 341 (citing 11 U.S.C. §§ 541(a) & (b) and 548).

Subsection b continues:

> In addition, a person against whom a transfer is voidable can reach the property transferred. In such cases, therefore, the assignee's right is not superior to that of the lien obtained by garnishment or like process. A revocable gratuitous assignment, for example, does not limit the power of the assignor's creditors to levy on the assigned claim.

Comment, Restatement (Second) of Contracts § 341 (citing Restatement (Second) of Contracts § 332).

None of these exceptions are applicable in the present case. The first exception (the Trustee recovering assignor's interest in the property under Section 541) is barred by collateral estoppel. Section 548, the bankruptcy fraudulent conveyance statute, is not impugned—undisputedly, Belfor gave reasonable equivalent value in exchange for the assignment by constructing the Helmses' new home.

That leaves us where we began: seeking a person against whom the transfer is voidable. The example provided in the comment is inapposite in that this was not a revocable gratuitous assignment. Id.

Looking further into the few cases cited in the Restatement comparing the rights of an assignor's creditors to those of his assignee, only one presents factual circumstances similar to the present case, Ketchikan Shipyard, Inc. v. Anchorage Nautical Tours, Inc. (In re Anchorage Nautical Tours, Inc.), 102 B.R. 741, 744 (B.A.P. 9th Cir. 1989). Its holding, however, supports Belfor's position, not the Trustee's.

In Anchorage Nautical Tours, the Ninth Circuit Bankruptcy Appellate Panel ruled that a written assignment of insurance proceeds is not required to make the transfer

enforceable against the bankruptcy trustee.  Id. at 744-45.  In that case, a shipyard made

repairs on a vessel pursuant to an agreement with the ship owner-debtor and an insurance

company, which was to indemnify all costs of a repair.  Id. at 742.  The debtor orally

agreed to assign the insurance proceeds to the yard, but the yard was never paid.  Id.

After the debtor went into bankruptcy, the insurance company requested a court order

determining who was entitled to payment.  Id. at 742-43.  The bankruptcy judge held that

the insurance proceeds belonged to the debtor's estate.  Id.  Reversing the lower court and

remanding the matter for the imposition of a constructive trust on the insurance funds (in

favor of the yard), the B.A.P. held that the debtor had effectively assigned its insurance

claim for repairs to the yard.  Id. at 744-45.  That court recited the general rule found in

the Restatement: no formal written agreement was necessary to establish a transfer, and

the transferor-debtor merely held the payments in constructive trust for the yard.  Id. at

744.  The transferee-yard's right to the monies was superior to all others' interests,

including the Trustee's.  Id. at 744-45.

      While that case was decided under Alaska law, the Trustee cites no reason why

the outcome would be any different in North Carolina.  In fact, he cites no North Carolina

authority, case, or statute supporting his view.  Therefore, this Court endorses the view of

Anchorage Nautical Tours that an oral assignment of insurance proceeds is effective in

bankruptcy.  The assignment of the Insurance Proceeds to Belfor is enforceable both as to

the Helmses and their creditors.

V.      Potentiality of Equitable Relief.

      A final reason weighs in favor of awarding these funds to Belfor—it is the

equitable result.

In a recent case presenting similar facts, this Court held certain fire insurance proceeds derived from a prepetition fire loss of the debtor's residence to be Section 541 estate property.  Ward v. Unitrin Direct Prop. & Cas. Co. (In re Stafford), 357 B.R. 730 (Bankr. W.D.N.C. 2006).  On appeal, the U.S. District Court reversed that decision, holding the monies to be subject to an equitable lien in favor of a general contractor that rebuilt the debtor's residence.  In re Stafford, No. 5:06CV145-V (W.D.N.C. Sept. 15, 2011).  The District Court reasoned that where a debtor engages a contractor before bankruptcy to reconstruct a residence destroyed by fire with the general understanding that the contractor will be paid from the fire insurance proceeds on that residence, the debtor, the estate, and other creditors would be unjustly enriched by receiving both the benefits of that arrangement (the value of the new residence) while denying the contractor payment from the intended source.  Id.

Specifically in Stafford, the District Court found that there was an intent for the insurance monies to be held in trust for the benefit of the debtors and general contractor so the debtors' home could be rebuilt, and that, pursuant to an insurance account disbursement agreement, the contractor had been designated as the co-payee of the debtors.  Id.  Because the contractor had given valuable consideration in exchange for his asserted interest in the insurance proceeds, the Court determined the contractor was "not similarly situated to other general unsecured creditors asserting a claim against the [d]ebtors' estate" and ultimately found an "imposition of an equitable trust is warranted in order to prevent unjust enrichment."  Id.

Neither party to our dispute has cited to Stafford, and there are differences between the two cases.  The facts are not on "all fours," although they are close.  And the

trustee in <u>Stafford</u> did not assert a Section 544 claim to the insurance proceeds.  If applied

expansively, the <u>Stafford</u> case might impinge upon the Bankruptcy Code's ratable

distribution scheme.  It does, however, at a minimum reflect the District Court's

perspective on the equities of these trustee-contractor disputes over insurance loss

proceeds.  Even though the two cases are distinguishable, this Court is obliged to respect

those views.

In conclusion, as established in the prepetition State Judgment, the Insurance

Proceeds received by the Debtors were assigned to Belfor and were held in constructive

trust for Belfor.  That assignment is not voidable, either by Sandra Helms or her creditors.

Therefore, the remaining proceeds currently possessed by the Trustee belong to Belfor

and must be turned over, including any interest accruals thereon.

Summary judgment is **GRANTED** in favor of Belfor.  The Trustee's counter-

motion is **DENIED**.


**SO ORDERED.**


This Order has been signed electronically.                    United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.